Frederick W. SCHWARTZ, Jr., Appellant,

v.

CONNORS, FISCINA, SWARTZ & ZIMMERLY, Appellees.

No. 90–CV–301.

District of Columbia Court of Appeals.

Submitted Nov. 12, 1991.

Decided April 20, 1993.

---

Frederick W. Schwartz, Jr. pro se.

Robert M. Adler, Washington, DC, for appellees.

Before ROGERS, Chief Judge, and FARRELL, Associate Judge, and REILLY, Senior Judge.

REILLY, Senior Judge:

Before us is an appeal from two separate post-judgment orders awarding attorney fees in the total amount of $585 to appellees which became final after such judgment was affirmed by this court in *Connors, Fiscina, Swartz & Zimmerly v. Rees, et al.*, 599 A.2d 47 (D.C.1991). Our examination of the record reveals no error in the first order granting $250 in attorney fees to the movants, but provides no support for the second order awarding $335. We reverse the latter, affirm the first fee award, and remand to the trial court for entry of an amended order.

## I.

The underlying action in this matter resulted in a judgment entered by Judge Kessler of the Superior Court after a bench trial, in a suit brought by the appellee law firm ("CFSZ") against its former "managing partner," Dean Swartz, Thomas Rees, and his law firm, alleging tortious interference with contracts between CFSZ and its clients, and also alleging defamation by Swartz. In a lengthy memorandum opinion, the trial court found against the plaintiffs on the claim for tortious interference

with clients,[1] but held that certain statements in a letter sent by Swartz to a married couple (clients of CFSZ) amounted to defamation. Accordingly, the court entered a judgment against Swartz for $10,000 in damages ($2500 compensatory, $7500 punitive).

An appeal was filed by CFSZ from the finding that neither Swartz's actions nor that of Rees and his law firm amounted to tortious interference with client relationships. Swartz cross-appealed from the judgment against him. As we have noted, neither appeal was successful.

The dispute which culminated in the appeal now before us began when Swartz sought to stay the judgment against him pending appeal. As a condition for granting such stay, the trial court, on May 15, 1989, ordered the posting of a supersedeas bond, in the amount of $10,000 to be "deposited in an interest-bearing escrow account, the details of which shall be agreed to between counsel." After discussions with Robert Adler, counsel for CFSZ, Frederick Schwartz, counsel for Swartz, wrote his adversary that he had worked out an arrangement with a local bank for the establishment of an escrow account paying 8.5% interest. The letter, dated July 11, 1989, stated that if Adler would sign and return an enclosed signature card, Schwartz would deposit $10,000 on behalf of his client. Adler did so.

About five weeks later, Adler having discovered that no deposit had been made, wrote Schwartz threatening to draw the attention of the court to the matter and seek sanctions, unless a deposit was made within the next five business days (*i.e.*, before September 1st). Schwartz apparently did not reply. On September 26, Adler filed a motion asking the court to "enter an Order requiring Defendant Swartz to Show Cause why he should not be held in Contempt of this Court's Order" mandating posting of supersedeas bond. The motion also requested that Swartz be ordered to pay CFSZ reasonable attorney fees and costs. When served with a copy of this motion, Swartz himself deposited the sum of $10,000 along with interest from mid-July, without waiting for his counsel to respond. This fact was drawn to the attention of the court in an opposition filed by Schwartz to the show cause motion, explaining that the "delay from mid-July" was "due to a technical problem." [2]

The movants (CFSZ) responded by pointing out that the accrued interest deposited by Swartz covered only the period from mid-July when counsel agreed upon the bond posting procedure rather than from the date of the court order in May, thereby violating the agreement, and renewed its request for sanctions. Asserting that this pleading contained a misstatement as Adler had agreed to the mid-July interest date (memorialized in a letter from him to opposing counsel), Schwartz returned to the fray by requesting the imposition of sanctions (*i.e.*, attorney fees) because the signer had violated Rule 11.[3] This document was

---

1. In clearing Swartz of these charges, the court dismissed Rees and his law firm as parties/defendant, noting that any liability to the plaintiffs for loss of clients derived from the premise that the principal defendant had engaged in tortious misconduct.

2. This particular sentence in the Schwartz response is misquoted in appellee's submission here.

3. Super.Ct.Civ.R. 11 reads:

   The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the Court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

submitted with the Adler letter attached. Adler then conceded that his statement was inadvertently inaccurate, but again urged the court to issue a show cause order.

On December 14, 1989, the trial court disposed of these motions without a hearing, by issuing a memorandum order holding the show cause motion moot because the requisite bond had been posted. Nevertheless the court granted attorneys' fees in the amount of $250 to CFSZ as "it would appear that the defendant only posted bond because the motion was filed." It denied the Schwartz request for Rule 11 sanctions, observing that the Adler letter to Schwartz was "not sufficiently clear to justify imposition of sanctions ... [and] given the insignificance of the allegation, the request is frivolous and is denied."

Not content to let the matter rest, Schwartz filed a motion requesting the court to reconsider not only its denial of his motion for sanctions, but also its award of attorney fees to the opposing party. He questioned the prior finding that the Adler letter was not sufficiently clear, pointing out that the court itself ultimately found that the parties had agreed that interest would run only from the July 15th date. He argued that the refusal to impose sanctions was error, citing *Montgomery v. Jimmy's Tire & Auto Center, Inc.,* 566 A.2d 1025 (D.C.1989).

With respect to the sanctions imposed for failure to comply promptly with the court's order on supersedeas, he explained that far from disobeying the court's order, he had acted in good faith. He stated that after he and opposing counsel had worked out the details of the escrow deposition in mid-July, he had tried to negotiate with the local lawyer for the insurance carrier of the codefendant to put up the bond, because of its possible liability if the judgment against Swartz was allowed to stand. The motion to show cause had been filed by opposing counsel, while these negotiations were still in progress.

In arguing that the court was mistaken in finding that defendant would not have posted bond except for the show cause motion, Schwartz explained that the seeming disregard of the court's order was not intentional. He averred that far from making no effort to comply, he had undertaken (after the agreement on the bond posting procedure) to persuade counsel for the insurance carrier of the codefendant to put up the bond because of its contingent liability for damages if the judgment against Swartz was allowed to stand. He had difficulty in reaching this lawyer because he was out of town, but was eventually advised to prepare a demand letter with a supporting memorandum of law concerning the carrier's liability. The show cause motion was filed before he could do this.

Opposing the reconsideration motion, CFSZ asserted that it had been untimely filed[4]—a day late under Super.Ct.Civ.R. 59(e) according to its computation—and that the excuse for the delay (i.e., the negotiations with the insurance carrier) was "highly suspect," as Schwartz had never given such an explanation in his talks with Adler or in his original opposition to the show cause motion. Characterizing the motion as merely "another attempt to avoid compliance ... [and] frivolous," appellees again requested the court for reasonable attorney fees for the time and money expended in preparing the opposition.

In a succinct order, filed a month later, the trial court denied the reconsideration request finding that "absolutely no good cause exists to grant the motion." Again, without a hearing, the court awarded attorneys' fees to the appellees—this time in the amount of $335 for "time and expenses incurred in opposing ... motion for reconsideration."

## II.

■ Before we analyze the merits of the appeal, we are faced with a threshold question raised by counsel for the appellees. His brief states, and appellant concedes,

---

4. In this court, appellees have apparently abandoned any claim of untimeliness, for counsel's brief states that "Swartz *promptly* filed a motion for reconsideration of the court's order." (Emphasis supplied).

that Swartz, the latter's client, has already paid the attorney fees imposed by both the first and second orders. He urges us to dismiss the instant appeal on the ground that the challenged judgment having been satisfied, the case is moot. He argues that Schwartz, who appears here as party appellant, has no standing to appeal.

In his reply brief, appellant Schwartz points out that because Rule 11 (*see supra* note 3 for text) directs a court to impose sanctions upon the signer of a document offending its provisions as well as a "represented" party, he is under an obligation to reimburse his client for the money paid to the movants for sanctions, as neither order specified that Swartz was the person obligated to pay. In any event, we do not deem appellees' point well taken, as a docket entry reveals that after Swartz had filed notice of appeal, the court granted an unopposed motion to substitute Schwartz as party appellant. In light of this order, we reject the request to dismiss.

Assigned as error on appeal are three rulings of the trial court: (1) the award of attorney fees for filing the motion to show cause, (2) the rejection of appellant's request for imposing Rule 11 sanctions on CFSZ, and (3) the second award of attorney fees as a penalty for filing the reconsideration motion. It appears to us that the first order presents a different issue from the second and third issues, as only the last two involve the proper application of Rule 11.

■ The first order imposing sanctions contains no reference to the source of the court's authority to levy such a penalty. Obviously it was not Rule 11, for the court was not punishing the defendant for the filing of any pleading, but rather for its treatment of the order to post bond. Although the word "contempt" was not used, it is plain that the court in its expression of displeasure with the failure to comply promptly with its order, was exercising its authority to punish for civil contempt. As we said in *D.D. v. M.T.*, 550 A.2d 37, 44 (D.C.1988):

Courts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order has the obligation to obey it honestly and fairly, and to take all necessary steps to render it effective.... Indeed, he ... must be diligent and energetic in carrying out the orders of the court.... The "American rule" notwithstanding, the contemnor is ordinarily required to pay the aggrieved party's counsel fees, even in the absence of a finding of willfulness. [Citations omitted.]

As we deem the holding in *D.D.* as establishing a proper guideline for trial judges, we discern no error in the first imposition of sanctions even though the court found that because of belated compliance, the motion to show cause was moot and no contempt order was necessary. *See also Fullard v. Fullard*, 614 A.2d 515, 518 (D.C. 1992).

■ We are troubled, however, by that portion of the first order denying appellant's motion for attorneys' fees. The motion alleged that his adversary's first reply to his opposition to the contempt motion contained a material misstatement. In refusing to grant the motion, the court said:

Defendant requests Rule 11 sanctions because, he alleges, counsel for plaintiffs inaccurately suggested that the defense had violated an agreement regarding the date for payment of interest. The letter of August 25 from Mr. Adler to Mr. Schwartz is not sufficiently clear to justify imposition of sanctions. Moreover, given the insignificance of the allegation, the request is frivolous and is denied.

In our view, there was nothing ambiguous in the letter. Adler had conceded as much when this document was brought to his attention and excused his prior pleading as "inadvertent." It is true that the amount of the disputed interest—probably little more than $150—was insignificant but plaintiff's inaccurate allegation put into issue Swartz's defense to the accusation of defiance of the court's order, *viz.*, that such order had been complied with. The court apparently overlooked the fact that the plaintiff's false allegation caused Schwartz to spend time in preparing and filing a

paper to refute it. As Rule 11 mandated the imposition of sanctions under appellant's showing, we reverse this portion of the memorandum order and remand for the imposition of sanctions against appellee. *Montgomery v. Jimmy's Tire & Auto Center, Inc., supra,* 566 A.2d at 1029 & n. 4 ("leaves no room for the court to refrain from sanctioning the violator"). *Accord, Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

We have also concluded that the award of fees to appellees under Rule 11 (*supra,* note 3) for opposing appellant's motion for reconsideration cannot be supported. The court in ordering the movant to pay his adversary $335 did not explain why it had determined that his pleading offended Rule 11 standards. It did not even mention Rule 11, although this was the sole ground cited by CFSZ for requiring the imposition of sanctions. Thus, in the absence of any findings concerning the applicability of Rule 11, the order was defective. *See Montgomery v. Jimmy's Tire & Auto Center, Inc., supra,* 566 A.2d at 1029–30. It is true that in its accompanying order denying the motion the court had found that "absolutely no good cause" existed for granting it. In other words, the court viewed the reasons advanced by the pleader for a change of the court's mind as utterly unconvincing. We have recently had occasion to point out, however, that the mere fact that a pleading is unconvincing, does not mean that a court is warranted in levying the penalties of Rule 11 on the pleader. *Green v. Fireison,* 618 A.2d 185, 189 (D.C.1992).

Ordinarily, when we hold an order of a motions court deficient because of lack of supporting findings, our procedure is to remand thereby giving the court an opportunity to cure this defect. In this instance, however, a remand would be futile.[5] We are holding that portion of the first order rejecting appellant's request for sanctions error. Hence it follows that the segment of appellant's papers drawing the attention of the court to authorities holding to the contrary would foreclose any court in this jurisdiction from finding that appellant's pleading was not "warranted by existing law" or was "interposed for any improper purpose."

Although appellant's motion for reconsideration was not directed solely at the court's adverse ruling on his motion for sanctions—it also sought to reopen the $250 award of attorney fees against him— we do not regard this portion of the pleading as requiring a remand for further findings concerning the second award to CFSZ. What appellant was attempting was to convince the court by furnishing an explanation for his seeming contumacy that he had not wilfully disobeyed the court's order. Appellees' reply—tacitly accepted by the court—was that the proffered explanation was legally irrelevant.

Although strictly speaking lack of wilfulness is no excuse for failure to comply promptly with an order of a court, *D.D. v. M.T., supra,* 550 A.2d at 44, it is nevertheless a relevant factor which a litigant may properly urge upon the court as reason to refrain from imposition of a sanction. *Cf. Braxton v. Howard University,* 472 A.2d 1363, 1365 n. 3 (D.C.1984) ("wilfulness 'is still a factor to be considered in the court's choice of the sanction to be applied' " for violation of discovery order) (citation omitted). In these circumstances, we do not see how it would be possible to hold that appellant's motion to reconsider the fee award explaining his behavior— though it may have been unconvincing— was "[un]warranted by existing law...." Rule 11. *See Green v. Fireison, supra,* 618 A.2d at 190.

Accordingly, in reversing and remanding for the entry of an appropriate order consistent with this decision, we mean an order requiring appellees to reimburse appellant for the attorney fees paid to them under the second order and those fees erroneously denied him.

***Affirmed in part, reversed in part.***

---

**5.** *See Green v. Fireison, supra,* 618 A.2d at 189 & n. 9.